DECISION AND JUDGMENT ENTRY
This is an appeal from a judgment of the Lucas County Court of Common Pleas that denied appellant's petition for postconviction relief. For the reasons that follow, this court affirms the judgment of the trial court.
Appellant sets forth the following assignment of error:
 "THE TRIAL COURT ERRED WHEN IT CONCLUDED TRIAL COUNSEL WAS NOT INEFFECTIVE AND, EVEN IF HE WAS, THE RESULT OF THE TRIAL WOULD NOT HAVE BEEN DIFFERENT."
The facts that are relevant to the issues raised on appeal are as follows. Shortly before noon on June 17, 1993, real estate agent Charlotte Schrier was sitting in her car in Toledo waiting to meet a client when a man got into the back seat and ordered her to drive away. After ordering Schrier to drive to an isolated area, the man pulled her from the car and forced her to cut her own arm with a razor blade. After that, however, Schrier was able to run to safety. Shortly thereafter, Schrier's car was found engulfed in flames. Several weeks later, appellant was arrested and charged with kidnaping, assault and arson.
On November 17, 1993, following a jury trial, appellant was found guilty of one count each of kidnaping, in violation of R.C. 2905.01(A); felonious assault, in violation of R.C. 2903.11(A)(2); and arson, in violation of R.C. 2909.03. Appellant was sentenced to consecutive terms of ten to twenty-five years imprisonment for kidnaping, eight to fifteen years for felonious assault, and two years for arson. This court affirmed appellant's conviction and sentence. State v. Bigelow (Feb. 10, 1995), Lucas App. No. L-93-351, unreported.
On July 25, 1996, appellant filed a petition for postconviction relief, pursuant to R.C. 2953.21, in which he asserted that he was prejudiced by ineffective assistance of trial counsel. In support of his petition, appellant offered the affidavits of three persons who placed him in Columbus, Ohio, on the date of the attack. Appellant argued that he had informed trial counsel of these alibi witnesses but counsel had not contacted them prior to trial.
In response to appellant's petition, the state filed a motion for summary judgment/motion to dismiss. In its motion, the state argued that appellant's claim was barred by the doctrine of res judicata and that, in any event, appellant had failed to establish that he was denied effective assistance of counsel.
On August 12, 1997, the trial court denied appellant's petition, finding that the claim was barred by the doctrine of res judicata. The trial court further denied appellant's request for an evidentiary hearing, finding that he had failed to demonstrate sufficient operative facts to show he was prejudiced by ineffective assistance of counsel.
Appellant appealed the decision of the trial court, asserting that the court erred by applying res judicata to his claim for relief and by denying his request for an evidentiary hearing. Upon review, this court found that the trial court erred in dismissing the petition based on resjudicata because appellant's claim of ineffective assistance of counsel relied on evidence outside the trial record and thus could not have been raised on direct appeal. Upon examination of the affidavits submitted by appellant in support of his petition, this court found that they contained evidence that, if believed, would challenge the credibility of Charlotte Schrier's testimony. We concluded that the affidavits contained sufficient operative facts showing substantive grounds for relief to entitle appellant to a hearing on his petition and remanded the matter to the trial court for an evidentiary hearing.
On October 15, 1999, the trial court held the mandated hearing on appellant's petition. Appellee called Attorney Peter Rost, appellant's trial counsel, as a witness. Rost testified that during the course of his representation of appellant at trial the issues of appellant's identity as the assailant and of a potential alibi were raised. Rost stated that appellant denied committing the offenses but could not recall exactly where he was on the date in question, although he thought he was in Columbus. Rost testified that appellant provided him with the names of several people who could prove he was not in Toledo on the date the offenses occurred and stated that he investigated each of those persons. Rost stated that he followed up on all of the names appellant gave him but said he was never given the names of Christine Patridge, Vic Timler or Jay Loyzelle, the individuals appellant claimed had seen him in Columbus on the date of the attack. He first became aware of the existence of those individuals when he read appellant's motion for a new trial and the accompanying affidavits.
During the course of his investigation, Rost did speak to a person named Gary Chasen. After appellant told Rost that he had occasionally worked for Chasen, Rost called him but Chasen was not able to provide any information to verify appellant's whereabouts on June 17, 1993. Rost further testified that Chasen gave him some background information on appellant, but nothing that would be helpful to the case. Rost also spoke to someone at a dental clinic in Columbus where appellant thought he might have been, and spoke to some Orkin Pest Control employees who may have worked with appellant at Chasen's home on June 17, 1993. Rost recalled that he located Orkin employee Vernon Greenlee, who testified at trial that he thought he knew who appellant was and thought he had seen appellant at the Chasen property on the date in question. Rost stated that Greenlee testified that the job at Chasen's home took two days to complete and he did not recall which of those two days he saw appellant at the property.
Rost further testified that he followed up with friends of appellant in Columbus whose home appellant thought he might have been visiting on June 17, 1993. Appellant recalled having been at his friends' home when their child was taken to the emergency room and Rost obtained the hospital records for the incident but it turned out that the events had transpired on another date. Rost also checked Greyhound Bus records because appellant said he always took the bus when he traveled, but they were unable to verify any of appellant's travel times. Rost further testified that he contacted appellant's other friends in Columbus and had them check their long-distance phone records to see if appellant had used their phone, but found no calls appellant might have made from Columbus to Toledo or Toledo to Columbus on June 17, 1993. Rost further stated that he did not ask the court to assign an investigator to assist him with this case.
Appellant presented the testimony of Christine Ceresna- Patridge, who testified that in June 1993, she co-owned Moonlighting Landscape Lighting in Columbus with Victor Timler. Ceresna-Patridge stated that in June 1993, the company did some work on Gary Chasen's property. She further testified that she received a letter from appellant on November 3, 1993, explaining that he had been arrested and asking her to check the company's records to verify that she was working in Columbus on the Chasen property on the date in question. Ceresna-Patridge testified that shortly after receiving the letter from appellant she called Rost but never received a return call. She stated that she did not know the exact date that she called Rost and admitted that she had no way of knowing if Rost ever received the message that she called. Ceresna-Patridge testified that her company kept detailed records of its work schedule and that several of the employees recalled talking to appellant, who was at the site all day. She further recalled that in May 1996, she submitted an affidavit on appellant's behalf.
Appellant's next witness was Ceresna-Patridge's business partner, Victor Timler, who recalled receiving the letter from appellant asking for his and his partner's help in verifying that he was in Columbus on the date of the attack. Timler stated that when they received appellant's letter they checked their records to verify that they had worked at Chasen's on June 17, 1993. Timler further recalled having talked for three or four minutes to an individual who was pruning shrubs the morning Timler was working on Chasen's property and stated that appellant looked "similar to the guy" but that he "really [couldn't] tell" because it was six years ago. He testified that he could say "pretty darn close" that appellant was the person he saw at Chasen's property, then stated that he was positive, then said he was eighty percent sure, then one hundred percent. Timler further stated that he had not contacted Rost at any time and did not know whether anyone else from his company had.
Jay Loyzelle testified that he worked for Ceresna- Patridge and Timler. Loyzelle did not see the letter from appellant but said that he was told about it and, to his knowledge, Ceresna-Patridge checked the company's records to verify that they had worked at Chasen's property on June 17, 1993. Loyzelle recalled talking to someone at the property on that date "for quite a while" and identified appellant as that individual. Loyzelle further testified that appellant was there before he arrived at approximately 8:30 a.m. and that he was pretty sure appellant was still there when he left at 5:00 or 5:30 p.m. that afternoon. Loyzelle never tried to contact appellant's attorney after receiving the letter in 1993.
Attorney Richard Kerger testified that in his opinion Attorney Rost should have sought appointment of an investigator to assist him in following up on leads in the Columbus area.
Appellant testified that he was certain he told Rost when he wrote letters to Orkin and Moonlighting because he recalled telling Rost that he gave those people Rost's home phone number so that Rost would know why they were calling if they called him at home. Appellant also proffered the testimony of a psychologist as to circumstances that can lead to a victim misidentifying her assailant.
In an opinion and judgment entry filed on December 7, 1999, the trial court denied appellant's petition for postconviction relief. The trial court found believable Attorney Rost's testimony that he had contacted at least twelve individuals prior to trial to investigate appellant's alibi defense and that he would have subpoenaed Ceresna-Patridge, Timler and Loyzelle if he had been given their names. The trial court concluded that without knowledge of their existence, Rost could not have been expected to present them as witnesses. The trial court further concluded that appellant's assertions that he told Rost about the three witnesses were not credible. The trial court noted that appellant testified that he had told Rost about the three witnesses, then said he told Rost he had written them a letter, and then said he was not "obligated" to give Rost any leads. The trial court further noted that Ceresna-Patridge agreed on cross-examination that she did not know whether Rost ever received her phone message. The trial court concluded that appellant had failed to show that counsel's performance fell below an objective standard of reasonableness and that, even if Rost had been aware of the witnesses and refused to call them, their testimony would not have changed the outcome of the trial because they were vague and unconvincing and could not offer specific and solid evidence that appellant was not in Toledo at the precise time of the attack. The trial court further noted that none of the witnesses from Columbus offered any documents to prove they were working on a job for Chasen on June 17, 1993. Finally, the trial court found that Charlotte Schrier's credibility had not been called into question. It is from that judgment that appellant appeals.
In his sole assignment of error, appellant asserts that the trial court erred by concluding that counsel was not ineffective. Appellant argues that Rost's investigation of the case was not reasonable because he failed to adequately investigate the Columbus alibi. Appellant asserts that Rost should have hired an investigator in Columbus to check out any possible leads at the Chasen property and should have returned Ceresna-Patridge's call. Appellant further asserts that Rost was indifferent to the leads he gave him and that Rost's testimony that he did not receive a message from Ceresna-Patridge is suspect in light of her testimony that she did call Rost.
To prevail on a claim of ineffective assistance of counsel, appellant must show that counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. This standard requires appellant to satisfy a two-part test. First, appellant must show that counsel's representation fell below an objective standard of reasonableness. Second, appellant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different when considering the totality of the evidence that was before the court.Strickland v. Washington (1984), 466 U.S. 668. This test is applied in the context of Ohio law that states that a properly licensed attorney is presumed competent. State v. Hamblin (1988), 37 Ohio St.3d 153.
In Middletown v. Allen (1989), 63 Ohio App.3d 443, 448, the Butler County Court of Appeals held that where counsel was aware of potential alibi witnesses and failed to subpoena them for trial, such failure constituted a substantial violation of an essential duty owned to the accused. In Allen, the trial court found that counsel had delegated to appellant the duty of having certain alibi witnesses subpoenaed and that counsel had failed to file a notice of alibi despite apparent knowledge of the potential exculpatory nature of the witnesses' testimony. In the case before us, however, trial counsel did not foist his job onto appellant. To the contrary, despite the handicap of representing a client who could not remember where he was on the date of the attack, Rost followed up on leads connected with Orkin, Gary Chasen, appellant's friends whose daughter went to the emergency room, and the dental clinic in Columbus. Rost also checked with Greyhound Bus for possible records of appellant's travels and had some of appellant's friends check their long-distance phone records, all to no avail.
We have thoroughly reviewed the transcript of the hearing on appellant's petition and find that the evidence does not establish that Rost knew about Ceresna-Patridge, Timler and Loyzelle before trial. Although appellant testified at the hearing that he told Rost about the possible Moonlighting witnesses, he could not say when he did so. And while Ceresna- Patridge testified that she called Rost, she could not say when she did so, or could she say with certainty that Rost received the message that she had called. Given the lack of definitive evidence as to whether Rost actually knew of the existence of the Moonlighting witnesses before trial and as to whether he received Ceresna-Patridge's call, we find that appellant did not satisfy the first prong of the Strickland
test by showing that trial counsel's representation fell below an objective standard of reasonableness. Accordingly, the trial court did not err by denying appellant's petition for postconviction relief and appellant's sole assignment of error is not well-taken.
On consideration whereof, this court finds that appellant was not prejudiced and the judgment of the Lucas County Court of Common Pleas is affirmed. Costs of this appeal are assessed to appellant.
James R. Sherck, J., Richard W. Knepper, P.J. Mark L. Pietrykowski,J., JUDGES CONCUR.
 ____________________________ JUDGE